## IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

JANET S. HILTON,                              )
                                      )
        Plaintiff,                    )
                                        )
    v.                                       )     Case No. 1:12-CV-866 (GBL/JFA)
                                        )
UNUM LIFE INSURANCE COMPANY OF     )
AMERICA,                                     )
                                        )
        Defendant.                   )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant UNUM Insurance Company of America's ("UNUM") Motion for Summary Judgment (Doc. 21) and Plaintiff Janet Hilton's ("Hilton") Cross Motion for Summary Judgment (Doc. 58). This case involves the interpretation and application of an express limitation to Plaintiff's long-term disability benefits by the administrator of an employee welfare benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461 *et seq.* 1001. There are three issues before the Court.

The first issue is whether Defendant UNUM reasonably interpreted and applied its policy language, temporally limiting Plaintiff's benefits based on her condition being primarily supported by self-reported symptoms. The Court holds that based on the administrative record before it at the time, UNUM did not abuse its discretion or act unreasonably because UNUM properly exercised its discretion in terminating Ms. Hilton's benefits based on its reasonable interpretation of its own policy language, which the Court affords great deference, and because

the administrative record reveals that migraine headaches are not objectively verifiable, such that Plaintiff's condition falls within the purview of the policy's limitation.

The second issue is whether UNUM's decision-making process was reasoned and principled. The Court concludes that UNUM's process was reasoned and principled because UNUM investigated Ms. Hilton's claim using both the information contained in Plaintiff's medical claim file and the medical evaluation of her claim. Therefore, the Court concludes that UNUM's process was reasoned and principled.

The third issue is whether UNUM improperly based its decision on a conflict of interest. The Court concludes that UNUM did not make its decision based on a conflict of interest, and the administrative record did not indicate that UNUM had bias toward Plaintiff. The Court also reaches this conclusion because UNUM consulted with two board-certified physicians to address Ms. Hilton's appeal and analyzed Ms. Hilton's medical documentation in generating its decision to Ms. Hilton's claim.

## I.   BACKGROUND

### A.   Statement of Facts

Ms. Hilton began working for the American Society of Civil Engineers ("ASCE") on or around October 2, 2000. She served as the ASCE Art Director. (Compl. ¶ 5.) ASCE entered into an insurance contract with UNUM that provided long-term disability insurance benefits. (*Id.* at ¶ 6.) The Disability Insurance Plan ("the Plan") constitutes an "employee welfare benefit plan" and is subject to various provisions of ERISA. (*Id.* ¶ 7.) Ms. Hilton was a plan participant and at all times, UNUM was the claims fiduciary for administration of the claims for disability benefits under the terms of the Plan. (*Id.* ¶ 9.) UNUM made all of the decisions regarding Ms. Hilton's claim for disability benefits. (*Id.* ¶¶ 8-10.)

Ms. Hilton suffers from migraine headaches.  On December 5, 2008, UNUM approved Plaintiff's long-term disability benefits based on this condition, and payments to Ms. Hilton began on October 16, 2008.  (*Id.* at ¶ 12.)  On October 21, 2010, UNUM terminated Ms. Hilton's benefits, stating that she reached the maximum twenty-four month period of payment for disabilities based primarily on self-reported symptoms.  (*Id.* at ¶ 13.)  Pursuant to the Plan, "self-reported symptoms" are defined as:

> the manifestations of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine.  Examples of self-reported symptoms include but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

(AR at 120.)

Ms. Hilton appealed the termination of her benefits to UNUM on April 21, 2011. Plaintiff also underwent two prior MRIs showing the existence of white-matter abnormalities. Based on this MRI finding, Plaintiff argued on appeal that her migraines were not based primarily on self-reported symptoms because her condition was verifiable by MRI.  Plaintiff contends that with objective verification of migraines by these MRI studies, the self-reported limitation does not apply.  By definition, manifestations of the disabling condition that are verifiable by testing are excluded from the limitation.  Where there exists objective tests or clinical examinations standardly accepted in the practice of medicine, Unum's self-reported symptom limitation does not apply.  (Def.'s Mot. Summ. J. at 13, Doc. 22.)

UNUM assigned an Appeals Specialist, Ms. Mininni, to conduct a review of Ms. Hilton's appeal.  (Administrative Record [hereinafter "AR"] at 2022-23.)  Ms. Mininni consulted a board-certified physician, Dr. Schnars, who provided a clinical summary of Ms. Hilton's treatment. (AR at 2036-39.)  The summary indicates that Ms. Hilton's symptoms are specifically listed as

self-reported symptoms according to the Policy and as a result, her benefits are limited to twenty-four months. (AR at 2114.) Ms. Mininni asked Dr. Schnars to respond to a series of questions. In response to whether the medical evidence in the file support disabling restrictions as of 10/15/2010, Dr. Schnars noted that "there are no physical disabling restrictions supported." (AR at 2039.) In response to the question of whether there is sufficient medical evidence to substantiate a diagnosis of migraine, Dr. Schnars answered, in part, "early description of headaches at initial evaluation describe chronic daily headaches with migraine component and the diagnosis of migraine headache or other primary type headaches is based on historical information." (*Id.*) In response to whether the available medical evidence (such as signs, diagnostics, and physical exam findings) correlate with the insured reported level of functional loss, Dr. Schnars answered, "there are no physical exam findings, laboratory or diagnostic testing to correlate with severity of reported symptoms or loss of functionality and self-reports of severity of pain and function are depended upon by treating physician for assessment and medication adjustment." (*Id.*)

In addition to Dr. Schnars' summary, UNUM also included a consultation of Plaintiff's claims with another board-certified physician, Dr. Re. The three questions posed to Dr. Re and his responses thereto are set forth below:

*What are the client's symptoms of migraine/chronic daily headaches?*

The medical records do not document the character of the headaches very well. No auras[1] are described and no location is noted other than to state that she has sharp shooting pains in her head. No precipitating factors are noted i.e. light, sound or smells. She did report associated nausea, vertigo, and poor sleep. She described her headaches as migraines that varied from weekly to daily. A variety of functional complaints were contributed to her headaches. There was some history of self-medicating with alcohol and problems with excessive use of pain relievers.

---

[1] An "aura" is a sensation, as of a glowing light or an aroma, preceding an attack of migraine or epilepsy. Merriam-Webster Dictionary 89 (2nd ed. 2001).

*Can the symptoms be verified by diagnostics, medical data, etc.?*

No. Diagnostic studies are used to rule out other causes of headache such as a tumor, vascular disease, inflammatory disorder or an infectious process. There are no specific lab or X-ray studies that are diagnostic of Migraine. Although some micro-vascular changes have been described in patients with migraine they are not specific and do not correlate with severity of frequency. They do not predict outcome or help with treatment regimens.

*Does the MRI of the brain (white matter findings) support symptoms of migraine?*

No. There is no known correlation with the non-specific white matter findings that are described in patients with migraines and their reported symptoms.

*Given the impression on MRI, is there a correlation between small vessel disease in the presence of diabetes, HTN, with migraine, vasculitis, or possibly demyelinating process supported by the findings?*

Yes. Changes in the cerebral white matter have been described in all of the entities listed above and have been attributed to micro vascular changes. They can be helpful in supporting a diagnosis, but are not diagnostic of any one specific entity. They do not predict severity of disease and do not correlate with any specific sign or symptom. Therefore, most radiologists and neurologists when they see these changes give a series of possible diagnoses rather than one specific diagnosis.

Based on the file reviews and Dr. Re's responses, UNUM denied Ms. Hilton's appeal on July 14, 2011, concluding that Ms. Hilton's disability was only supported by self-reported symptoms and she was therefore ineligible to receive any additional coverage for her disability. (AR at 2111.) To date, Ms. Hilton has complied with and exhausted all administrative appeals.

On August 3, 2013, Ms. Hilton filed a Complaint in this Court to appeal UNUM's final decision denying her long-term disability benefits. (*See* Doc. 1.) In her Complaint, Plaintiff argues that UNUM unreasonably and wrongfully denied her long-term disability benefits due to her under the terms of the Plan. (Compl. ¶ 28, Doc. 1.) Specifically, Plaintiff alleges that UNUM abused its discretion in applying the self-reported symptoms provision to her claim when

an objective test exists to confirm the migraines, namely the MRI documenting white matter changes in the brain, which are common with migraine patients. (*Id.* at ¶ 22.) Further, Plaintiff alleges that UNUM further abused its discretion by failing to apply the portion of the definition as to verification by "procedures or clinical examinations standardly accepted in the practice of medicine." (*Id.* at ¶ 23.)

Importantly, on April 15, 2013, Ms. Hilton objected to rulings made by Magistrate Judge Davis in his denial of Ms. Hilton's Motion to Compel production of documents and responses to interrogatories. (Pl.'s Rule 72(a) Objections to Magistrate Judge's Order on Mot. to Compel, Doc. 49.) The Court affirmed the Magistrate Judge's ruling and denied Ms. Hilton's Motion to Compel Production of Documents and Responses to Interrogatories, thereby limiting summary judgment to the administrative record. (*Id.*) On March 1, 2013, UNUM filed its present Motion for Summary Judgment. (Pl.'s Mot. Sum. J., Doc. 21.) On May 28, Ms. Hilton responded in opposition to UNUM's Motion for Summary Judgment and also filed a Cross Motion for Summary Judgment as a Matter of Law. (Def.'s Cross Mot. Sum. J., Doc. 58.) These Motions are now ripe for the Court's review.

## II.     STANDARD OF REVIEW

### A.     Rule 56 Summary Judgment Motion

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (2013).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Once a motion for summary

judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247-48).

A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (*citing Anderson*, 477 U.S. at 248). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**B.     District Court's Review of ERISA Appeal**

District courts have a framework for reviewing the denial of benefits under ERISA plans. Where the terms of an employee benefit plan provide discretionary authority to determine a

claimant's entitlement to benefits or to construe the terms of a plan, the fiduciary's decision is granted deference and will be overturned only where there is an abuse of discretion. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). In such a case, the court will apply an abuse of discretion standard of review. *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000). In an abuse of discretion standard of review, evidence to be considered by a district court is limited to the administrative record, which consists of the claim file and the plan documents. *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 631 (4th Cir. 2010).

In reviewing the administrative record, a district court should not disturb a reasonable administrative decision, even if the court itself would have reached a different conclusion. *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 89 (4th Cir. 1996). District courts assess reasonableness by determining whether the administrative decision is the result of a deliberate, principled reasoning process supported by substantial evidence. *Evans v. Eaton Corp.*, 514 F.3d 315, 322 (4th Cir. 2008). Accordingly, the district court reviews a denial of benefits deferentially to determine if an abuse of discretion occurred, such that it can be shown that the determination was arbitrary and capricious. *Firestone Tire and Rubber Co.*, 489 U.S. at 113. The non-exclusive factors a court may consider when determining whether an abuse of discretion occurred include:

> (1) the language of the plan; (2) the purpose and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008) (citing *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir.2000)).

## III. DISCUSSION

The Court holds that UNUM did not abuse its discretion in terminating Ms. Hilton's disability benefits because UNUM acted reasonably in interpreting and applying the language of the Plan and classifying Ms. Hilton's migraine headaches as a condition "primarily based on self-reported symptoms." Additionally, the Court finds that UNUM's decision-making process was reasoned and principled in light of UNUM's reliance on the opinion of two board-certified physicians. Furthermore, the Court opines that, contrary to Plaintiff's position, UNUM did not make its decision based on a conflict of interest, but rather acted reasonably in reviewing Plaintiff's claims.

As an initial matter, the Court holds that the Plan conveyed UNUM discretionary authority to interpret and apply the terms of its Plan, thereby affording UNUM deferential review of its decisions. An ERISA plan administrator, fiduciary, or trustee is empowered to exercise all his authority in a discretionary manner subject only to review for arbitrariness and capriciousness. *Firestone Tire and Rubber Co.*, 489 U.S. at 113. The Policy grants UNUM discretionary authority to make benefit determinations including determining eligibility for benefits and interpreting and enforcing the provisions of the Policy. (AR at 127.) Additionally, the certificate of coverage provides that, "when making a benefit determination under the Policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the Policy." (AR at 98.) Therefore, because the Policy grants UNUM discretionary authority, the Court will only overturn UNUM's decision upon an abuse of discretion. *Firestone*, 489 U.S. at 109.

9

An abuse of discretion is determined by a standard where the court analyses whether the administrative decision is reasonable. *Haley*, 77 F.3d at 89. The Court analyzes reasonableness using the non-exclusive *Booth* factors such as:

> (1) the language of the plan; (2) the purpose and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Champion*, 550 F.3d at 359 (citing *Booth*, 201 F.3d at 342-43). Here, Ms. Hilton, a plan participant in an ERISA-established plan, was denied long-term benefits after twenty-four months. Ms. Hilton suffers from migraine headaches, which UNUM classified as "headache" in the Plan's definition of self-reported symptoms.[2]   In analyzing the reasonableness of the administrator's decision, the parties primarily focus on two *Booth* factors, namely (1) the language of the plan and (5) whether the decision-making process was reasoned and principled. Accordingly, the Court looks to these two factors in reviewing the parties' cross-motions.

### A.   *The Language of the Plan*

The Court finds that UNUM did not abuse its discretion when interpreting and applying the language of its Plan. In *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285, 300 (2009), the Supreme Court applied the "plan documents rule," under which plan administrators look solely at "the directives of the plan documents" in determining how to disburse benefits. This rule follows the plain text of the ERISA statute, which instructs

---

[2] Pursuant to Defendant's Plan, "self-reported symptoms" are defined as "the manifestations of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy." (AR at 120.)

employers to distribute benefits "in accordance with the documents and instruments governing the plan." *Boyd v. Metropolitan life Ins. Co.*, 636 F.3d 138, 140-41 (4th Cir. 2011). Plan administrators are granted primary interpretive authority over an ERISA plan according to the plan documents rule, which preserves the careful balancing upon which ERISA is based. *Firestone*, 489 U.S. at 109. When interpreting the language of the plan, courts have said that it must be given its common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words, not as the actual participant would have understood or desired. *Parker v. Kraft Foods Global, Inc.*, No. 3:07cv87, 2010 WL 1929555, at *13 (W.D.N.C. May 12, 2010).

To qualify for benefits beyond the 24-month limit under UNUM's policy, Plaintiff's condition that forms the basis for her claim must not be based on a disability primarily based on self-reported symptoms. (AR at 120; Def.'s Mem. Supp. Def.'s Mot. Summ. J. at 23.) Self-reported symptoms are those manifestations of Plaintiff's condition that are not verifiable using test, procedures, or clinical examinations, including but not limited to headaches. (AR at 900.) UNUM contends that Plaintiff's migraine headache condition falls within the self-reported limitation because headaches, and more specifically migraine headaches, are self-reported manifestations not verifiable by medical testing. (AR at 1201.) Specifically, UNUM determined that no test or procedure can diagnose migraines and, contrary to Plaintiff's representation, MRI's are used only to rule out organic causes of the headaches, including the neuroimaging that Plaintiff argues objectively verifies migraine headaches. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. at 25, Doc. 22.)

Several courts have evaluated similar claims based upon nearly identical plan limitations. In *Huberts v. ATA Holdings Corp. Welfare Benefit Plan*, No. 1:07-cv-287, 2008 WL 687127, at

11

*4 (S.D. Ind. Mar. 10, 2008), the court evaluated UNUM's interpretation and application of the same policy limitation. There, UNUM determined that the plaintiff was no longer entitled to long-term disability benefits based on the fact that the policy's limitation for headaches that were primarily based on self-reported symptoms. The *Huberts* court found that UNUM's decision was based on a rational interpretation of the plan and the medical evidence before it at the time of its decision. *Id.* The court found that the plan at issue in *Huberts* provide a limited disability benefit for disabilities "primarily based on self-reported symptoms." *Id.* The plan in *Huberts* specifically listed "headaches" as an example of a self-reported symptom and Huberts based his claim of disability on headaches. *Id.* Therefore, the *Huberts* court reasoned that while the ptosis may have constituted some clinical confirmation of the existence of one of the types of headaches complained of by Huberts, his disability, if any, was still "primarily based on self-reported symptoms." *Id.*

Similarly, in *Rupert v. Prudential Insurance Co.*, 2006 WL 910405, at *11 (M.D. Pa. Apr. 7, 2006), the court granted summary judgment to insurer based in part on the insurer's reasonable application of a self-reported symptom limitation. The plan at issue contained a twenty-four month limitation on benefits for conditions based on self-reported symptoms. Because the plaintiff's disability claim was based on self-reported symptomology, namely headaches and depression, the court found the insurer's interpretation of its policy language and its application of the limitation to the plaintiff's claim reasonable, concluding that the insurer acted neither arbitrary nor capricious.

Akin to *Huberts* and *Rupert*, UNUM in this case reasonably interpreted the language of the Plan when denying Ms. Hilton's claim. When UNUM initially approved Ms. Hilton for long-term benefits, it quoted the key Policy language including the self-reported symptoms

provisions under which the maximum benefit period for all disabilities based primarily on self-reported symptoms is twenty-four months.  (AR at 534.)  Pursuant to the Plan, "self-reported symptoms" are defined as:

> the manifestations of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

(AR at 120.)  This plan language was provided to Ms. Hilton in writing once her long-term benefits were approved.   Ms. Hilton was also advised that her migraine headaches were considered self-reported symptoms and the maximum period of twenty-four months applies to her claim.  (AR at 535.)   UNUM interprets headaches as self-reported symptoms because headaches and other self-reported symptoms are not medically verifiable. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. at 25.)   Additionally, UNUM's two board-certified physicians opined that migraine headaches are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine.  (AR at 2039.)   Thus, UNUM reasonably interpreted the language of the Plan when denying Ms. Hilton's claim.

The Court rejects Ms. Hilton's argument that migraine headaches are objectively verifiable and confirmed by neuroimaging, such that her condition does not fall within the "self-reported symptoms" definition. (Pl.'s Opp'n at 2, Doc. 57.)  To support her position, Ms. Hilton points to the MRI documenting white matter changes in the brain as the objective test used to verify migraines and contends that white matter changes in the brain are common with migraine patients. (Compl. ¶ 22.)  To the extent that Plaintiff argues that migraines are diagnosed through medical testing, her argument misstates the issue presented.   The issue is not whether the *diagnosis* of migraines is verifiable using tests and procedures, but rather whether the

*manifestations* themselves—the headaches—are verifiable using tests and procedures.  The policy language defines self-reported symptoms as the manifestations (i.e, the headaches) of your condition (migraine headaches) which are not verifiable using clinical tests or procedures. The administrative record is entirely devoid of any evidence that headaches are verifiable using medical testing.  To the contrary, UNUM's medical team opined that no test currently exist to verify the presence of headaches.  The Policy language does not, as Plaintiff reads, apply the limitation to *diagnoses* of which are objectively verifiable.

Moreover, the Court rejects Plaintiff's argument that white matter findings on a brain MRI provide evidence of migraine headaches. (P's Mot. for S. J. at 35.)  Plaintiff argues that her diagnosis for migraines is verified by the presence of white matter lesions revealed in the MRIs. *Id.* at 36.  According to Dr. Re, the symptoms of migraine headaches cannot be verified by MRI. (UNUM's MSJ at 16-17.)  In fact, adjunctive diagnostic testing is used to exclude other diagnoses or secondary causes of headaches.  (AR at 2039.)  Both board-certified physicians concluded that the presence of white matter on MRI is not diagnostic of migraines because 12-46% of migraine patients had white matter on MRI.  (P's SMF at ¶18.)

The Court also rejects Plaintiff's argument that UNUM acted unreasonably in determining that migraine headaches are distinct from "normal" or "regular" headaches, such that UNUM unreasonably applied it to her claim.  UNUM contends that migraine headaches are undisputedly self-reported and not objectively verifiable according to their Plan language. (Def.'s Mem. Supp. Def.'s Mot. Summ. J. at 25.)  UNUM's list of self-reported symptoms includes a provision that says, "including but not limited to" which suggests that there could be other self-reported symptoms that are not listed and that decision is based on UNUM's discretion.  Therefore, since two board-certified physicians found that migraine headaches are

not objectively verifiable and the Plan does not restrict the self-reported symptoms to only the conditions listed, UNUM was reasonable in its denial of Plaintiff's long-term disabilities based on a condition of migraine headaches.   Plan administrators are granted primary interpretive authority over an ERISA plan, and based on Plaintiff's claim file, medical literature, and its own understanding of the Policy terms, UNUM classified "migraine headaches" as part of the category of "headaches" "in accordance with the documents and instruments governing the plan," and UNUM exercised appropriate discretion to do so. *Firestone Tire & Rubber Co.*, 489 U.S. at 109.

Therefore, UNUM, based on the evidence before it, acted reasonably at the time of its decision in classifying headaches as self-reported.   There is no evidence in the administrative record that suggests that UNUM had any information to support the conclusion that migraine headaches were distinct from headaches or that migraine headaches were objectively verifiable. To the contrary, the evidence shows that UNUM engaged medical expert opinion in evaluating Plaintiff's claim, the results of which did not conclusively support Plaintiff's position.   Thus, the Court is compelled to affirm UNUM's interpretation as reasonable absent any evidence to the contrary.

### B.      *Whether the Decision-making Process was Reasoned and Principled*

The Court also finds that UNUM's decision-making process was reasoned and principled because it was based on a deliberate, principled reasoning process.   "An administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Evans*, 514 F.3d at 322.   A principled reasoning process can be determined by consideration of the complete record, reliance on independent medical evaluations, and assessment of the claimant's vocational capacity amounted to a principled

reasoning process. *Donnell v. Metropolitan Life Ins. Co.*, 165 F. App'x. 288, 295 (4th Cir. 2006). In *Donnell*, MetLife commissioned a physician not affiliated with Metlife to review the medical evidence in Plaintiff Donnell's file. *Id.* at 291. The *Donnell* court found the benefits decision principled and reasoned in their dispute because it included a genuine and thorough consideration of all the evidence before it and it reviewed all medical evidence that Donnell submitted, measured Donnell's vocational abilities, procured an independent evaluation of the medical evidence, and considered all of the conditions that Donnell claimed contributed to her disability. *Id.* at 295. Thus, a process is not principled and reasoned if the benefits decision was based on interpretations of Plan terms that render text superfluous, or disregard plain meaning. *Id.* Whether the decision process is based upon an independent medical review, the Court must find the process to principled and reasonable. *Id.* at 292.

Similarly here, Ms. Hilton argues that UNUM's decision-making process in denying her appeal was not reasoned and principled. (Pl.'s Opp'n at 38, Doc. 57.) Ms. Hilton contends that UNUM did not give fair consideration to other procedures used and present in this record to verify diagnosis of migraine. *Id.* The Court finds, however, that UNUM did not abuse its discretion because its decision-making process was reasoned and principled based on the guidelines set forth in *Donnell*. UNUM's evaluation of Ms. Hilton's appeal included an evaluation of Plaintiff's MRIs, headache calendars, and a variety of medical records from Ms. Hilton's eleven different physicians. (AR at 1251-1491.) Additionally, UNUM assigned a Lead Appeals Specialist to conduct a review of Ms. Hilton's appeal, which included reviewing the medical records of Ms. Hilton's eleven different physician reports and a medical records review from two board-certified internal medicine physicians in order to make the most principled decision. (AR 2029-31) The reviewing physicians confirmed the self-reported nature of

16

migraine headaches.  (AR at 2036-39.)  One physician indicated that there are no specific lab or X-ray studies that are diagnostic of migraine headaches.  (AR at 2039.)

*Huberts* also informs the Court's decision here.  UNUM's decision-making process was reasoned and principled because upon review of Ms. Hilton's appeal of UNUM's decision, UNUM carefully and thoroughly investigated Ms. Hilton's claim using both the information that Ms. Hilton claimed contributed to her disability and the evaluations of two board-certified physicians.  (AR 2029-31.)  UNUM followed the terms of the Plan and determined that Ms. Hilton met her burden of establishing that the relevant limitation did not apply to her headaches. (Def.'s Mot. Summ. J. at 22, Doc. 22.)  The *Huberts* court found that UNUM was reasonable and principled in their analysis and their decision-making process was not arbitrary and capricious as a result of the fact that Ms. Hilton's file was reviewed by a registered nurse, Ms. Mininni, and one of its board-certified physicians, Dr. Stewart Russell.  *Id.* at 2.  In fact, UNUM asked Dr. Russell whether in regards to self-reported headaches, there are any conditions supported whose manifestations (symptoms) are verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine.  *Id.* at 3.  Dr. Stewart replied and said, "No. There is no support for an organic cause of his self-reported headaches."  *Id.*

Here, UNUM's decision-making process was reasoned and principled because upon review of Ms. Hilton's appeal of UNUM's decision, UNUM thoroughly investigated Ms. Hilton's claim using both the information that Ms. Hilton claimed contributed to her disability and the evaluations of two board-certified physicians.  (AR 2029-31.)  UNUM followed the terms of the plan and determined that Ms. Hilton met her burden of establishing that the relevant limitation did not apply to her headaches.  (Def.'s Mot. Summ. J. at 22, Doc. 22.)  *Cf. Palm v. Wausau Benefits, Inc.*, No, AMD 05-2170, 2007 WL 927617, at *4  (D. Md. Mar. 26, 2007)

(finding that a plan administrator did not abuse his or her discretion in determining that the plaintiff was no longer "totally disabled" based upon medical evaluations and a vocational analysis indicating that the plaintiff could perform a sedentary occupation on a part-time basis). Thus, the Court holds that UNUM's decision-making process was not arbitrary and capricious and based on a deliberate, principled reasoning process.

### C. *Whether there was a Conflict of Interest*

The Court holds that UNUM did not act unreasonably in reviewing Plaintiff's claim due to a known but unresolved conflict of interest. A plan administrator's dual role of both evaluating and paying benefits claims creates a conflict of interest. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 106 (2008). A conflict of interest exists where it is the employer itself that both funds the plan and evaluates the claim, but a conflict also exists where the plan administrator is an insurance company. *Id.* The significance of the conflict of interest will depend on the circumstances of each case. *Id.* at 107. In analyzing potential conflicts of interest by plan administrators, courts review the plan's determination under the abuse-of-discretion standard, and courts consider the conflict only as a factor, among several, in determining whether the plan's determination was reasonable. *Id.* at 108. If the administrator or fiduciary having discretion is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. *Firestone Tire & Rubber Co.*, 489 U.S. at 115.

As noted above, courts have determined that there is a conflict of interest that exists where the plan administrator is an insurance company but the significance of the conflict of interest will depend on the specific circumstances. *Glenn*, 554 U.S. at 107. In *Glenn*, the plaintiff, Glenn, brought suit to appeal the denial of benefits by her plan administrator. The

18

Supreme Court gave the conflict of interest factor some weight, but focused more heavily on other factors.   First, MetLife had encouraged Glenn to argue to the Social Security Administration that she could not work, received the bulk of the benefits of her success in doing so (being entitled to receive an offset from her retroactive Social Security award), and then ignored the agency's finding in concluding that she could do sedentary work.   Second, MetLife emphasized one medical report favoring denial of benefits, deemphasized other reports suggesting a contrary conclusion, and failed to provide its independent vocational and medical experts with all of the relevant evidence.   *Id.*   In *Glenn*, the court found the other factors evidence of an arbitrary and capricious decision-making process and set aside the administrator's decision.   *Id.*

In this case, however, the Court finds that the circumstances outside of the conflict of interest factor are not evidence of an arbitrary and capricious decision-making process.   In viewing UNUM's appeals process in light of the circumstances, the Court finds that, although UNUM had a conflict of interest, the circumstances lead to the conclusion that UNUM's decision-making process was reasonable.   Ms. Hilton argues that UNUM has a structural conflict of interest because UNUM makes both the decisions on claims and pays the claims from its general revenues. (Def.'s Opp'n at 27, Doc. 57.)   Ms. Hilton contends that there is little doubt that UNUM's conflict of interest played a role in the decision on Ms. Hilton's claim because UNUM failed to apply the Plan terms to Hilton's claim and instead, UNUM's attorney directed the conclusion of a purported physician reviewer.   *Id.*   Plaintiff argues that in directing the physician's review of Ms. Hilton's claim, UNUM's attorney does not refer to the language of the Plan; she does not ask claims personnel to apply the language of the plan or to ascertain from medical consultants whether there exist tests, procedures or clinical examinations standardly

accepted in medical practice that could verify diagnosis or manifestations of migraine. (Pl.'s Reply at 18.) Instead, plaintiff argues that UNUM's attorney's memorandum focuses entirely on how to deny the claim and what is needed in the record to do so.

The Court does not find Plaintiff's contention persuasive. There is no evidence in the record that UNUM's attorney directed the physician's review or that the physician did not conduct any additional medical research before providing a recommendation for Ms. Hilton's claim. In fact, UNUM's attorney specifically asked Dr. Re if Plaintiff's symptoms can be verified by diagnostics or medical data and whether Plaintiff's MRIs support her migraine symptoms. (AR at 2105.) The Court finds UNUM's approach here to be reasoned and principled and without a showing in the administrative record of bias toward Plaintiff in their appeals process. Additionally, UNUM consulted with two board-certified physicians to address Ms. Hilton's arguments and they also analyzed Ms. Hilton's medical literature in generating their decision to Ms. Hilton's claim.

For these reasons, the Court holds that UNUM's decision-making process was not arbitrary and capricious and, as such, UNUM did not abuse its discretion because of a conflict of interest.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment for four reasons. First, UNUM properly exercised its authority in terminating Ms. Hilton's benefits based on its own interpretation of its clear policy language, which the Court affords great deference and because of evidence that migraine headaches are not objectively verifiable. Second, UNUM's process was reasoned and principle because upon review of Ms. Hilton's appeal of UNUM's decision, UNUM thoroughly investigated Ms. Hilton's claim using

both the information that Ms. Hilton claimed contributed to her disability and the evaluations of two board-certified physicians.  Additionally, UNUM followed the terms of the Plan and determined that Ms. Hilton met her burden of establishing that the relevant limitation did not apply to her headache.  Lastly, UNUM's approach was reasoned and principled and without a showing in the Administrative Record of bias toward Plaintiff in their appeals process. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 21) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion for Summary Judgment (Doc. 58) is **DENIED**.

**IT IS SO ORDERED**.

ENTERED this _22nd_ day of August, 2013.

Alexandria, Virginia
8/ 22/2013

                                                    /s/
                                        _____
                                        Gerald Bruce Lee
                                        United States District Judge

21